UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INOVISION SOFTWARE
SOLUTIONS, INC.,

        Plaintiff,                             No. 19-12580

v.                                         District Judge Sean F. Cox
                                             Magistrate Judge R. Steven Whalen

AUTIS INGENIEROS, S.L.U. and
AUTIS ENGINEERING LLC,

        Defendants.
                                       /

**OPINION AND ORDER**

      Before the Court is Plaintiff's Motion to Compel Each Defendant to Provide Full and Complete Discovery Responses [ECF No. 34]. For the reasons and under the terms set forth below, the motion will be GRANTED.

**I.    BACKGROUND**

      Plaintiff Inovision Software Solutions, Inc. ("Inovision") is a Tier 1 automotive supplier. Specifically, Inovision provided its customers– automotive manufacturers– computerized defect detection systems.  Although Defendant Autis Ingenieros, SLU ("AI") is a competitor in that market, Inovision and AI had occasion to collaborate on certain projects. Central to this case, Inovision states that it and AI entered into a series of contracts whereby AI would develop "computerized software-based defect detection products...for use within the overall systems which Plaintiff was to provide" to its customers. ECF No. 34, PageID.735.  Four purchase orders ("POs", appended to Plaintiff's First Amended Complaint  as Exhibits B, E, G, and H, comprise the contracts. ECF No. 13, PageID.287-293, 310-316, 320-326, 328-334.  Pertinent to the present

motion is ¶ 26 of each PO, which states:

> " 26. Intellectual Property
>
> **A.**  Any copyrightable works, ideas discoveries, inventions, patents, products, or other information (collectively "Intellectual Property") developed in whole or in part by or on behalf of Seller in connection with or relating to the Products shall be the exclusive property of Buyer.  Upon request, Seller shall sign all documents and otherwise cooperate with Buyer as necessary to assign, confirm and perfect the exclusive ownership of all Intellectual Property rights in the Products to Buyer."  ECF No. 13, PageID.292-293.

Plaintiff brings numerous claims against these Defendants, including breach of contract, unjust enrichment, tortious interference with contractual relations, and misappropriation of trade secrets.  Plaintiff states that during AI"s work on the project,

> "Plaintiff provided substantial unpaid help and support to AI in completing the ordered products and Plaintiff regards this unpaid help and support, along with the IP, as its trade secrets. The unpaid help and support were confidentially disclosed to AI and included creating algorithms and software for AI; disclosing its own defect dynamic 'in process' hardware and software defect detection architectures; disclosing its pending defect detection patent applications; and providing its defect detection source code." *Joint List of Unresolved Issues*, ECF No. 42, PageID.1078.

In this motion, Plaintiff seeks an order compelling AI to disclose a description of the intellectual property associated with the products that were developed under the POs. Plaintiff contends that this information, which includes the attendant software for the defect detection system, including the computer source code and the access codes, is solely within the possession of AI, and that it needs this information "to specifically identify the IP and establish the IP actually exists, in breach of paragraph 26 of the terms, was wrongfully withheld from Plaintiff and is being wrongfully used by Defendants for their benefits, thereby establishing Plaintiff's breach of contract and unjust enrichment claims...." ECF No. 42, PageID. 1078.

In addition to the source code associated with the products that were developed

under the PO, Plaintiff also seeks the source code of products that AI provided to Toyota, Tesla, and other manufacturers, related to defect detection systems. It is Plaintiff's claim that AI misappropriated its trade secrets, including its source code in delivering products to other manufacturers.

## II. DISCUSSION

Fed.R.Civ.P. 26(b) governs the scope of discovery in a civil case:

> "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Thus, the scope of relevance under Rule 26(b) is broader than the Federal Rules of Evidence which govern admissibility at trial. It is well established that "the scope of discovery is within the sound discretion of the trial court," *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir.1993), and the Court has broad discretion over discovery matters. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999).

The parties have differing views over what was "deliverable" to Plaintiff under the contracts, and what constitutes the Plaintiff's intellectual property. Under Plaintiff's interpretation of ¶ 26, the intellectual property that is required to be assigned is *anything* "in connection with or relating to" the products, including not only software that was jointly developed, but any software that AI brought to the project independently:

> "THE COURT: So during the course of that collaboration, if you want to call it that, during the course of that, there were certain software applications that were jointly developed. Would that be fair to say?
>
> MR. CHUPA: I would say yes. I would say that when we ordered the software, we gave them the input and we believe they put the input into the

-3-

overall system. That's our belief, Judge.

THE COURT: Okay. And your interpretation of paragraph 26 is that anything that was developed jointly like that, you have a right to have that assigned–to have the defendants assign that to you, correct?

MR. CHUPA: And I think paragraph–yes, paragraph 28 says, "exclusive ownership."

THE COURT: Exclusive ownership.  Okay. What about–what about software applications, source codes, other items that the defendant had developed itself, and had ownership of prior to this contract?

MR. CHUPA: We call that background technology. Your Honor, the—

THE COURT: Wait a minute. Do you have a right to that?

MR. CHUPA: We do, if it is connected to or related to the products.

THE COURT: So you are saying that–you're saying if the defendant comes in or a contractor comes in, works on a product for you or for your client, and uses their own applications, under this contract, you have a right to have that assignment?

MR. CHUPA: We have the right to anything related to or connected to the products.

THE COURT: Even if–even if the defendant or a contractor had copyrighted or patented materials, you're saying their patent–their copyright is assigned to you?

MR. CHUPA: It–we have rights to use that so we can operate the system, Your Honor, just–

THE COURT: Well, you didn't have the right to use it, you said you have exclusive ownership. Do you have exclusive ownership of their property which was protected by copyright or patent before they entered into a contract?

MR. CHUPA: Our interpretation is that is part of the background technology that the contract encompasses, because it is related or to connected to the products we claim exclusive ownership of, that is pursuant to paragraph 26. " *Transcript of Oral Argument*, ECF No. 47, PageID.1309-1310.

AI's position, on the other hand, is that the only "deliverable" under the contracts was the physical defect detection system. And although the system obviously has software

embedded within it, Plaintiff is not entitled to that software, and most particularly the source code, because that was IA's own proprietary software that it developed prior to the contract with the Plaintiff, and not developed during the course of the project:

> "THE COURT: So just so I'm clear in this, when we're talking about the source codes or if we're talking about other software applications that your client utilized in developing this product, you are saying that what was utilized was intellectual property that your client owned before the execution of the contract. In other words, there are no source codes, there are no other software applications different from what your client owns, that were developed during the course of this product? You didn't come up with some new software program, it is somethin that you already owned. Is that what you're saying?
>
> MR. HERMANN: That's what I'm saying, Your Honor." *Transcript*, ECF No. 47, PageID.132-1321.

Now, if this were a summary judgment motion or a trial, certain factual and legal issues would have to be resolved. Did Plaintiff contribute to the development of the software used in the product, or was it only IA's own previously developed software that was utilized? As shown by the above exchanges, the parties do not agree on this. Even if the software and source code originated with IA and were not modified, does Plaintiff have "exclusive ownership" of it under the contracts? Plaintiff says yes, Defendant says no, and it's ultimately a question of interpretation of the contracts. In either case, if it is found that the Plaintiff owns the source code and related software related to the defect detection system, did IA misappropriate Plaintiff's trade secrets when it sold a detect detection system to Toyota? Again, depending upon how the "ownership" question is resolved, this is a question of fact.

But this is not a trial or a summary judgment motion, it is a discovery motion, and as such, it is not the appropriate mechanism to resolve these factual and legal issues. But I do find that under the broad scope of Rule 26(b), the Plaintiff is entitled to discovery that

is relevant to its claims, and that includes the requested source code and related software used in the product that IA delivered, as well as the requested financial related discovery (Requests to Produce Nos. 113 and 114), which is relevant to its claim for unjust enrichment.[1]

Nevertheless, the parties are competitors, and the production of this discovery must be subject to a strict protective order that guards against potential misuse of this highly confidential and proprietary information. In *Mahavisno v. Compendia Bioschience, Inc.*, 2015 WL 248798, the Plaintiff brought a copyright infringement claim asserting the defendant had misappropriated software that he developed and in which he himself had an intellectual property interest. Similarly to the present case, plaintiff sought discovery of the defendant's source code in order to compare it to the code he authored, in order to determine if a copyright infringement occurred. The Court approved production of the defendant's source code under an "attorneys eyes only" protective order, but declined to order disclosure to the plaintiff himself. In so ruling, the Court recognized that a source code is a highly confidential trade secret:

> "In any event, the Court finds that Defendants have met their burden of showing that "Attorneys' Eyes Only" designation of their source code is justified. Source code constitutes a trade secret, *Dynamic Microprocessor Assoc. v. EKD Computer Sales*, 919 F.Supp. 101, 106 (E.D.N.Y.1996), that goes to the heart of what makes a company and its products or services unique. Plaintiff and Defendants are engaged in contentious copyright litigation. While this Court declines to delve into the issue of whether Plaintiff is or is not likely to 'steal' Defendants' source code, the fact of the matter is that allowing Plaintiff to view it would make its exploitation a possibility." *Id*. at *14.

The same can be said of a corporate defendant's financial or sales information.

---

[1] Defendants have already agreed to product the access credentials for the software. [Request to Produce No. 87, Plaintiff's Second Request for the Production of Documents, ECF No. 34-4, PageID.810.

While it may be relevant (and hence discoverable) under the broad framework of Rule 26(b), it is highly confidential, and disclosure to an opposing party who is also a competitor in the marketplace "makes its exploitation a possibility."

The parties have in fact stipulated to, and the Court has entered a protective order that provides for a designation of certain material as "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY." ECF No. 31. Paragraph 7.3 of the Protective Order restricts the persons and entities to whom such material may be disclosed, and requires authorized recipients to acknowledge and be bound to non-disclosure. ECF No. 31, PageID.708-710. Therefore, the production of material produced pursuant to the present order will be subject to the HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY designation and the protections of the stipulated protective order.

Under these terms, Plaintiff's motion [ECF No. 34] is GRANTED, and Defendants will produce all disputed discovery set forth in the Joint List of Unresolved Issues [ECF No. 42].

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 14, 2021

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 14, 2021, electronically and/or by U.S. mail.

                                      s/Carolyn M. Ciesla
                                      Case Manager to the
                                      Honorable R. Steven Whalen