UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| INOVISION SOFTWARE SOLUTIONS, INC.,<br>    Plaintiff,<br>v.<br><br>AUTIS INGENIEROS, S.L.U., and<br>AUTIS ENGINEERING LLC,<br>    Defendants.<br>_____/ | Case No.: 19-12580<br><br>Sean F. Cox<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER (ECF No. 61) AND GRANTING
IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ORDER
TO ENFORCE A COURT ORDER (ECF No. 73)**

### I.    PROCEDURAL HISTORY AND BACKGROUND

Plaintiff Inovision Software Solutions, Inc. commenced an action against Autis Ingenieros, S.L.U., Autis Ingenieros, S.L., and Autis Engineering LLC in Oakland County Circuit Court, Michigan on or about August 2, 2019. (ECF No.1, PageID.1-2). On September 3, 2019, Defendant Autis Engineering LLC filed a Notice of Removal requesting the action be removed to the United States District Court for the Eastern District of Michigan, Southern Division. (*Id.* at PageID.4-5). On October 11, 2019, Plaintiff filed an amended complaint in response to the Court's September 24, 2019 order. (ECF No. 11). The crux of Plaintiff's claim is Defendants breached the contracts entered into between the

parties by misappropriating its trade secrets, including its client connections and source code, to poach deals and undercut Plaintiff's bids for other projects.

On April 13, 2021, Defendants filed a motion for protective order requesting the court stay discovery by requiring and scheduling Plaintiff's disclosures prior to permitting additional discovery by Plaintiff and to compel full and complete discovery responses from Plaintiff. (ECF No. 61). Plaintiffs responded to the motion (ECF No. 67), and Defendants replied (ECF No. 72). On May 7, 2021, Plaintiff filed a Motion for Order to Enforce the Court's April 14, 2021 order. (ECF No. 73). Defendants responded to the motion (ECF No. 74), and Plaintiff replied (ECF No. 77). The motions were referred to the undersigned on June 28, 2021. (ECF No. 90).

A hearing on both motions was held on September 15, 2021, at which counsel for both parties were present. For the reasons discussed below, Defendants' Motion for Protective Order (ECF No. 61) is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion for Order to Enforce a Court Order (ECF No. 73) is **GRANTED IN PART AND DENIED IN PART.**

II.     **GENERAL DISCOVERY LEGAL STANDARDS**

The Federal Rules of Civil Procedure were written to facilitate the discovery of relevant evidence proportional to the needs of each case. Rule 26 authorizes

relatively expansive discovery, subject to the considerations set forth in Rule 26(b)(1). Further, a court has broad discretion over discovery matters, *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999), and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and an order of the same is overruled only if the district court finds an abuse of discretion.[1] In assessing the proportionality, the court should look to:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Rockwell Med., Inc. v. Richmond Bros., Inc.*, 2017 WL 1361129, at *1 (E.D. Mich. Apr. 14, 2017) (quoting Fed. R. Civ. P. 26(b)(1)).

As explained in *Wilmington Trust Co. v. AEP Generating Co.*, 2016 WL 860693, at *2 (S.D. Ohio Mar. 7, 2016), courts have suggested both parties have some stake in addressing the various relevant factors. *Id.* (citing *Oracle America, Inc. v. Google, Inc.*, 2015 WL 7775243, at *2 (N.D. Cal. Dec. 3, 2015) (observing "[n]either party submitted a proper analysis of the Rule 26 proportionality factors"

---

[1] In deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and his order is overruled if the district court finds an abuse of discretion. 12 Wright, Miller & Marcus, Federal Practice and Procedure § 3069, 350 n. 20 (2d ed. 1997 & Supp. 2010) (citing cases). An abuse of discretion exists when the court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *Todd v. RBS Citizens, N.A.*, 2010 WL 3943545, at *2 (E.D. Mich. Oct. 6, 2010) (citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)).

and the moving party, Oracle, "did not fully address any of the proportionality factors, including the importance of the requested discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"—leaving the court in the position of having to "make its best judgment based on the limited information before it")). The Court observed that a responding party still must meet its burden of explaining how costly or time-consuming responding to a set of discovery requests will be, because that information is ordinarily better known to the responder than the requester. *Id.* However, once that information is presented, both sides are required to address the issue of proportionality, "especially since the requesting party can explain as well as the responder—and perhaps better—why the information it is seeking is important to resolving the case and why it would be a good use of the other party's resources to search for it." *Id.*

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. However, Rule 26(b)(1) requires a "threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence" in order to avoid the "proverbial fishing expedition, in hope that there *might* be something of relevance." *Tompkins v. Detroit Metro. Airport*, 278 F.R.D.

4

387, 388 (E.D. Mich. 2012). Additionally, "[d]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 304-05 (6th Cir. 2007).

### III.  ANALYSIS

<u>A. Defendant's Motion for Protective Order (ECF No. 61)</u>

Defendants filed a motion for protective order seeking an order "preventing Plaintiff from proceeding with discovery until Inovision sufficiently and with finality identifies the confidential information, trade secrets, and intellectual property allegedly misused by [Defendants]." (ECF No. 61, PageID.1644). Further, Defendants request Plaintiff be required to (i) submit a list to the Court identifying its confidential information, trade secrets, and intellectual property with reasonable particularity, and (ii) provide full and complete responses to Defendants' discovery requests, including reproducing all documents in accordance with Defendants' requested format requirements.[2] (*Id.* at PageID.1661,

---

[2] This issue was resolved during the September 15, 2021 court hearing where Plaintiff agreed to reproduce his production in accordance with the Protocol for Data Production/Deliverable Requirements. However, on September 22, 2021, Plaintiff filed a motion regarding the terms of draft joint stipulation concerning Plaintiff's reproduction. (ECF No. 127). The issues raised in the motion are novel (i.e., involve Plaintiff's previously made objections or designations and Plaintiff's ability to reproduce all of the previously produced documents) and were not addressed in the earlier briefings or during the September 15, 2021 court hearing. (*Id.*). The motion is not yet fully briefed and thus the Court is not yet in a position to issue an order or decision on the matter.

1664, 1666). Defendants allege to date Plaintiff's discovery responses fail to "identify with specificity the confidential information, trade secrets, and intellectual property purportedly misused by [Defendants]." (*Id.* at PageID.1653).

In Plaintiff's response, it identified the following items as the list of its Misappropriated Trade Secrets: (1) existence of the defect detection opportunity at the Kentucky Organization of Toyota; (2) identity of Plaintiff's key contacts at TMMK; (3) Plaintiff's TMMK cost grid; (4) the content of Plaintiff's proposal to TMMK which resulted in the issuance of the TMMK defect detection contract to Plaintiff; (5) Plaintiff's TMMK pricing strategy; (6) the combination of the existence and the content of Plaintiff's TMMK contact; (7) combination of the existence, the details, and the strategic reasons underlying Plaintiff's relationship with 3M, along with the identity of Plaintiff's key contacts at 3M; (8) unpaid help and support; (9) existence and requirement of defect detection opportunities at Toyota, Tesla, and Nissan; (10) identity of Plaintiff's key contacts at TMMTX, Tesla, and Nissan; (11) Plaintiff's defect detection proposals to TMMTX and Tesla and Plaintiff's dynamic defect detection approach to fulfill the requirement of Nissan; (12) the dynamic defect detention configuration and the use of this configuration to meet the needs of customers; and (13) the intellectual property which is to be assigned to Plaintiff pursuant to the respective provisions of Paragraph 26 of each of Plaintiff's Purchase Order Contracts. (ECF No. 67,

PageID.2002-03). Defendants contend Plaintiff's proffered list "is simply another iteration of [Plaintiff's] ever-changing list of trade secrets." (ECF No. 72, PageID.2402). Further, Defendants argue the list is deficient as it identifies general categories of information as a trade secret, fails to provide sufficient detail as to how the trade secret was transferred, and fails to identify how each item qualifies as a trade secret. (*Id.*).

Fed. R. Civ. P. 26(c) permits the court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. The party seeking a protective order has the burden of showing that good cause exists for the order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). To show good cause, the movant must articulate specific facts showing "clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citations and internal quotation marks omitted). Courts have great latitude in deciding whether to issue protective orders. *See Hines v. Wilkinson*, 163 F.R.D. 262, 267 (S.D. Ohio 1995).

On at least two prior occasions, Defendants have argued that Plaintiff's description of its respective trade secrets is insufficient—in regard to Plaintiff's October 11, 2019 amended complaint (ECF No. 13) and in response to Plaintiff's

7

December 30, 2020 Motion to Compel (ECF No. 34)—and in both instances the argument was rejected. In their motion, Defendants contend Plaintiff's discovery responses "contain the same generic, unspecific descriptions contained in the First Amended Complaint. . . ." (ECF No. 61, PageID.1653). However, the Court's February 20, 2020 found that Plaintiff's First Amended Complaint "describes, in detail, what confidential information [was] disclosed." (ECF No. 20, PageID.431). While the Court is aware that the standard for sufficiency in relation to pleadings differs from that of the standard required during the discovery stage, it is worth noting that during the pleading stage the Court found that Plaintiff's First Amended Complaint described "in detail, what confidential information [was] disclosed." (*Id.*; *see also Interactive Solutions Grp., Inc. v. Autozone Parts, Inc.*, 2012 WL 1288173 (E.D. Mich. Apr. 16, 2012)). Second, Defendants again raised the issue of specificity in response to Plaintiff's December 30, 2020 Motion to Compel (ECF No. 34) and requested the Court "direct Plaintiff to submit a particularized list stating with specificity the confidential information, trade secrets, and intellectual property it provided that was purportedly misused by [Defendants]." (ECF No. 39, PageID.1048). The Court's April 14, 2021 order did not grant Defendant's request and instead held that "under the broad scope of rule

26(b), the Plaintiff [was] entitled to discovery that is relevant to its claims" and granted Plaintiff's motion to compel.³  (ECF No. 62, PageID.1837-38).

Defendants now argue in the instant motion the list proffered by Plaintiff in its response is deficient as it continues to identify general categories of information as a trade secret, fails to provide sufficient detail as to how the trade secret was transferred, and fails to identify how each item qualifies as a trade secret.  (*Id.*). However, based on Plaintiff's discovery responses (ECF No.61-2, 61-3), the undersigned does not find that the information provided by Plaintiff fails to rise to the required level of specificity and particularity.  While Plaintiff's responses are lengthy, they appear to provide the information Defendants contend is absent.  For example, Plaintiff's response to Interrogatory Number 1 identifies the confidential information that was communicated, the date and location at which it occurred, and who was present.  (ECF No.61-2, PageID.1679-97).

Further, based on the discovery responses attached to Defendants' motion, it appears Defendants have only issued one set of interrogatories and document requests to Plaintiff thus far.  (ECF No. 61-2, 61-3).  While both parties, based on the record, authored subsequent correspondence regarding their position on the

---

³ Notably, Defendants initially submitted this request in response to Plaintiff's December 30, 2020 Motion to Compel.  However, Defendants did not object to the Court's decision to grant Plaintiff's motion to compel and in essence reject Defendants' request that Plaintiff submit a more particularized list of its trademarks.

9

inadequacy (ECF No. 61-4) or adequacy (ECF No. 61-7) of Plaintiff's responses. Based on the efforts undertaken to date by both parties in regard to this issue, the undersigned is not persuaded that a protective order is warranted at this stage. However, the undersigned is persuaded that an order compelling Plaintiff to supplement his discovery responses to Defendants' interrogatories by providing full and complete responses to Defendants' First Set of Interrogatories is warranted.[4]

Defendants' request for a protective order is **DENIED.** Further, Defendants' request for a stay of discovery and order relieving it of its obligation to provide responses to all extant discovery requests submitted by Plaintiff is **DENIED**. Defendant's request that Plaintiff be compelled to provide full and complete responses to Defendants' First Set of Interrogatories is **GRANTED**.

B. Plaintiff's Motion to Enforce a Court Order (ECF No. 73)

Plaintiff filed a Motion to Enforce the Court's April 14, 2021 order (ECF No. 73) directing Defendants to produce all disputed discovery set forth in the parties' January 26, 2021 Joint List of Unresolved Issues (ECF No. 42) which included the following categories of documents:

- Description of Intellectual Property (Interrogatories 1-5)

---

[4] Plaintiff agreed to reproduce his initial production during the September 15, 2021 hearing and thus the undersigned need not address this issue.

- Source Code Related to Inovision-Autis Purchase Orders (Document Requests 1-5)

- Software Development Environment and Access Credentials Related to Inovision-Autis Purchase Orders (Document Requests 6-10 and 87)

- Source Code Provided by Autis to Third Parties (Document Requests 16-18)

- Documents Related to Inovision-Autis Purchase Orders (Document Request 88)

- Financial Information (Document Requests 113-114)

Defendants argue they have produced all documents in their possession and control that are responsive to the discovery requests subject to the April 14, 2021 Court Order. (ECF No. 74, PageID.2431). Further, Defendants contend the crux of the issue pertains to Defendants' production of the source code which has been produced. (*Id.* at PageID.2431).

1. Interrogatories 1-5 (Description of Intellectual Property)

Defendants argue no intellectual property was developed by the parties in their collaborative work under the purchase orders that would meet the definition of "Intellectual Property." (*Id.* at PageID.2434). Further, Defendants allege such software source code utilized in relation to the purchase orders between Plaintiff and Defendants has been produced. (*Id.* at PageID.2435). Plaintiff responds that the term for Intellectual Property is broadly defined in Paragraph 26 of the General Terms and Conditions of each Purchase Order at issue in the case and Defendants

11

are inappropriately seeking to narrow the description to some undefined "collaborative work" instead of to the products described in the contracts. (ECF No. 77, PageID.2486-87). Plaintiff argues the "'description order' goes beyond the source code and includes such items as the hardware configuration and its operation." (ECF NO. 122, PageID.4450). Plaintiff further argues Defendants have not provided any of the source code which operates at GM Flint, Ford Flat Rock ("FRAP"), or Toyota Texas, which are also the subject of the Purchase Orders. (*Id.*).

The "Intellectual Property" definition included in the Purchase Orders, and as written in the Court's April 14, 2021 Order, does not limit the documents called for production to those developed by the parties in their "collaborative work." Thus, Defendants are **DIRECTED** to produce any remaining documents responsive to this category of requests pursuant to the Court's April 14, 2021 Order.

    2. Document Requests 1-5 (Source Code Related to Inovision Autis Purchase Orders)

Plaintiff contends its software expert avers that the software provided by Defendants to date "does not comprise the source code which resides within the products purchased by Inovision from AI and described in the [contracts] and the provided software has been manipulated and is incomplete." (ECF No. 77, PageID.2488). Defendants contend they produced the requested source code.

(ECF No. 122, PageID.4451). Further, Defendants argued during the September 15, 2021 hearing that the language below from the April 14, 2021 court order limited their obligation to produce documents as follows:

> But I do find that under the broad scope of Rule 26(b), the Plaintiff is entitled to discovery that is relevant to its claims, and that **includes the requested source code and related software used in the product that IA delivered, as well as the requested financial related discovery** (Requests to Produce Nos. 113 and 114), which is relevant to its claim for unjust enrichment.

(ECF No. 62, PageID.1838) (emphasis added). Defendants argued that the inclusion of the bolded language above in the order limited their discovery obligations. The undersigned is not persuaded as a complete reading of the Court's April 14, 2021 order shows that Defendants were directed to "produce **all** disputed discovery set forth in the Joint List of Unresolved Issues [ECF No.42]." (ECF No. 62, PageID.1839) (emphasis added). Thus, Defendants are **DIRECTED** to reproduce the source code requested in Production Requests 1 to 5 as ordered by the Court's April 14, 2021 order.

     3. Document Requests 6-10 and 87 (Software Development Environment and Access Credentials Related to Inovision-Autis Purchase Orders)

Plaintiff contends full access was not provided and the linkage and file structure environment was irrefutably destroyed. (ECF No. 77, PageID.2488). Defendants are **DIRECTED** to reproduce workable and accessible links, file

structures, and access credentials in response to Plaintiff's Document Requests 6 to 10 and 87 as ordered pursuant to the Court's April 14, 2021 order.

    4. Document Requests 16-18 (Source Code Provided by Autis to Third Parties)

Plaintiff requested a copy of all software source code relating to defect detection provided by Autis to Toyota, Tesla, and any entity not referenced in Document Request Numbers. 16 and 17. (ECF No. 42, PageID.1084). Defendants contend the April 14, 2021 Order only directs Defendants "to produce the source code in the products delivered to [Plaintiff] pursuant to the purchase orders between [Defendants] and [Plaintiff] that form the basis of this lawsuit, which Defendants [have] produced." (ECF No. 122, PageID.4453). No such restriction was included in the April 14, 2021 Order. However, Defendants represent that no responsive source codes exist as Defendants did not provide source code to any third-party entity. The Court cannot compel production of source codes which a party has represented does not exist. As there is no evidence at this stage that source code responsive to this request exists, Plaintiff's request is **DENIED**.

    5. Document Request 88 (Documents Related to Inovision-Autis Purchase Orders)

Defendants allege all responsive documents to this request were produced on January 27, 2021 and March 22, 2021. (ECF No. 122, PageID.4454). Plaintiff contends Defendants failed to provide any handbooks, user manuals, software

14

functional specification documents, or complete set of operational screen shots." (ECF No. 77, PageID.2489). Further Plaintiff knows and has confirmed that these items exist from conversations with Tesla and other manufacturers. (*Id.*) The Court cannot compel production of documents which a party has represented does not exist. As there is no evidence at this stage that additional responsive documents to this request exists, Plaintiff's request is **DENIED**.

6. Documents Requests 113-14 (Financial Information)

Plaintiff seeks all documents relating to all of Defendants' sales of defect detection products and services from 2015 to 2020 and all expenses related thereto. (ECF No. 74, PageId.2437). Further, Plaintiff contends it has received purchase orders which were not produced by Defendants through third-party subpoenas. (ECF No. 122, PageID.4454). However, Defendants contend they have produced all documents in their possession and control that relate to the requested information. (*Id.* at PageID.4455). As there is no evidence at this stage that additional responsive documents to this request exists, Plaintiff's request is **DENIED**.

IV. **CONCLUSION**

The Plaintiffs are ordered as follows:

- To supplement their responses to Defendants' Interrogatories.

The Defendants are ordered as follows:

15

- To supplement their responses to Interrogatories 1-5, Document Requests Numbers 1-10, and Document Request Number 87 to comply with the Court's April 14, 2021 order.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 30, 2021         <u>s/Curtis Ivy, Jr.</u>
                                                                             Curtis Ivy, Jr.
                                                                             United States Magistrate Judge